# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

CIVIL NO. 14-13382-GAO

ANDREW PIERRE,
Plaintiff,

v.

U.S. SECURITY ASSOCIATES, INC.,
Defendant.

## OPINION AND ORDER
January 30, 2015

O'TOOLE, D.J.

This action arises from plaintiff Andrew Pierre's termination from his position as a security guard with defendant U.S. Security Associates, Inc. ("USSA"). Pierre brings claims for breach of contract and failure to pay wages (Count I), vicarious liability for violation of firearm licensing laws (Count II), wrongful termination (Count III), intentional infliction of emotional distress (Count IV), and discrimination in violation of Massachusetts General Laws Chapter 151B, Section 4 (Count V). USSA had now moved to dismiss Counts II through V of the Complaint.

## I.  Factual Background

The Complaint alleges the following facts. Pierre began working as a security guard for USSA on September 19, 2011. In 2011, he was issued a Class A firearm license from the Massachusetts State Police which restricted his firearms use to hunting and target purposes. Pierre also held a certification in criminal justice from the Lincoln Technical Institute as well as certifications for special police officer training from the William Cloran Academy. Neil Maraj,

Pierre's supervisor at USSA, was aware of the restrictions applicable to the firearm license yet nonetheless assigned him to work on armed security details, which were beyond the scope of the license. Maraj assured Pierre that the Boston Police were aware of and approved of these assignments. On various occasions, Pierre was equipped with a 9 millimeter handgun and wore a Special Police Officer uniform. In July and August 2013, Maraj instructed Pierre to carry a .38 special handgun.

On August 16, 2013, Pierre and another security guard were assigned to an area that was known to be particularly dangerous, as shootings had occurred there on multiple occasions. There, a large group surrounded Pierre and the guard. One individual carried a large bottle of alcohol, which Pierre feared could be used as a dangerous weapon, and various members of the group threatened to "pop" Pierre, which he understood to indicate that they would shoot him. Pierre then removed his weapon from his holster. He did not fire his weapon nor did he point it at anyone. After the group withdrew, Pierre returned his gun to his holster and contacted USSA requesting that they contact the Boston Police Department for additional assistance.

When the police arrived, they discovered that Pierre did not have a license to carry firearms for employment purposes. On August 29, 2013, the Boston Police revoked Pierre's license to carry and USSA terminated his employment. USSA explained that it terminated Pierre because he was carrying a 9 millimeter handgun rather than a .38 special and because he withdrew his gun prematurely during the incident on August 16. Pierre contends that USSA terminated his employment out of fear that law enforcement would investigate its practice of assigning employees without proper gun licenses to Special Police shifts.

Pierre originally brought this action in Massachusetts Superior Court on July 25, 2014. On August 18, 2014, USSA removed the case to this Court under 28 U.S.C. § 1332.

## II. Discussion

### A. Count II: Vicarious Liability

Pierre alleges that USSA should be vicariously liable for encouraging employees to violate Mass. Gen. Laws ch. 140, § 131, which governs licenses to carry firearms. However, as USSA argues, this claim must be dismissed because the statute contains no private right of action. Juliano v. Simpson, 962 N.E.2d 175, 179 (Mass. 2012). Moreover, the case cited by Pierre to support his argument that an employer is liable for an employee's administrative violations involved the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68, which provides a private right of action. Hunt v. Weatherbee, 626 F. Supp. 1097, 1100 (D. Mass. 1986). For these reasons, Pierre does not state a claim for vicarious liability for violations of Massachusetts licensing laws.

### B. Count III: Wrongful Termination

Typically, an employer may terminate an at-will employee for any reason. Flesner v. Tech. Commc'ns Corp., 575 N.E.2d 1107, 1110 (Mass. 1991). However, there is a limited exception to this rule: a terminated employee may pursue an action "where the discharge is for reasons that violate public policy." Id.

Massachusetts courts have construed the public policy exception narrowly. King v. Driscoll, 638 N.E.2d 488, 492 (Mass. 1994). The public policy exception will apply where the employee is terminated "for asserting a legally guaranteed right . . . , for doing what the law requires . . . , or for refusing to do that which the law forbids," among other things. Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 533 N.E.2d 1368, 1371 (Mass. 1989). But Massachusetts courts have not recognized a general exception where an employee engages in "socially desirable duties," id., nor have they accepted such an exception where an employee

violates a particular statute, King, 638 N.E.2d at 493 ("[I]t is not necessarily true that the existence of a statute relating to a particular matter is by itself a pronouncement of public policy that will protect, in every instance, an employee from termination."). Similarly, the internal administration and procedures of a company cannot provide the basis for the public policy exception. Id. at 492.

To be sure, a policy of encouraging employees to use guns in an unauthorized manner has troubling public safety ramifications. But time and again Massachusetts courts have found that concerns about internal policy do not implicate the public policy exception, even where these concerns stem from a valid public safety or legal issue. See, e.g., Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241, 1244 (Mass. 1992) (not applying public safety exception where nurse made an internal report regarding patient care); Mello v. Stop & Shop Cos., Inc., 524 N.E.2d 105, 108 (Mass. 1988) (finding no reason to apply public policy exception where employee complained about internal false claims).

Further, Pierre does not show that Massachusetts courts have recognized a public policy exception where an employer makes fraudulent representations to an employee. The one pertinent case he cites, Baker v. A.W. Chesterton Co., No. 94-5598, 1998 WL 1285612, at *3 (Mass. Super. Ct. Apr. 30, 1998), is not persuasive or precedential authority. The case does not reference the public policy doctrine and provides minimal analysis as to why the wrongful termination claim asserted there should survive summary judgment. Id. As noted above, the Massachusetts courts generally have been reluctant to create broad public policy exceptions to support new claims of wrongful termination of at-will employment. See King, 638 N.E.2d at 584 ("To date, we have acknowledged very few statutory rights . . . which would warrant invocation of the public policy exception.").

### C. Count IV: Intentional Infliction of Emotional Distress

Pierre also brings a claim for intentional infliction of emotional distress. However, the Massachusetts Workers' Compensation Act provides the exclusive remedy for certain work-related injuries unless the employee submits a written reservation of his rights at the time he begins his employment. M.G.L. ch. 152, § 24. As a result, common law claims are barred where "the plaintiff is shown to be an employee; his condition is shown to be a personal injury within the meaning of the compensation act; and the injury is shown to have risen out of and in the course of employment." Foley v. Polaroid Corp., 413 N.E.2d 711, 713-14 (Mass. 1980) (internal quotations marks and citations omitted).

Pierre does not allege that he ever submitted a written notice reserving his rights under the Workers' Compensation Act. In addition, it is undisputed that Pierre was an employee of USSA and that his injury arose from his employment. See Lennon v. Walsh, 798 F. Supp. 845, 848 (D. Mass. 1992) ("[T]he fact that plaintiff alleges he was removed from his employment for an improper reason does not take his claim outside the scope of the [Massachusetts] workers' compensation law."). Similarly, intentional infliction of emotional distress is an injury within the meaning of the Act. Green v. Wyman-Gordon Co., 664 N.E.2d 808, 813 (Mass. 1996). Accordingly, this claim is barred under the exclusivity provision of the Workers' Compensation Act.

### D. Count V: Discrimination Claim under Massachusetts General Laws Chapter 151B

As to Pierre's discrimination claim, Pierre concedes that he failed to file a complaint with the Massachusetts Commission Against Discrimination as required under M.G.L. ch. 151B, § 5. He requests that the Court dismiss this claim without prejudice so he may pursue his remedies

5

using the proper procedure. Per Pierre's request, this claim is hereby dismissed without prejudice.

### III. Conclusion

For the reasons stated herein, the defendant's Partial Motion (dkt. no. 6) to Dismiss is GRANTED. Counts II, III, and IV are DISMISSED WITH PREJUDICE, and Count V is DISMISSED WITHOUT PREJUDICE.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge